UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL JAMES WELLS and
BRITNEY JANE ZANKER,

                                Plaintiffs,

      v.

PEGGY HARPER, et al.,

                                Defendants.
_____

9:25-CV-1535
(MAD/DJS)

APPEARANCES:

MICHAEL JAMES WELLS
Plaintiff, pro se
6283
St. Lawrence County Correctional Facility
17 Commerce Lane
Canton, NY 13617

BRITNEY JANE ZANKER
Plaintiff, pro se
5379 Trailer County Rt 6
Ogdensburg, NY 13669

MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

      This action was commenced by pro se plaintiffs Michael James Wells ("Mr. Wells") and

Britney Jane Zanker ("Ms. Zanker"), pursuant to 42 U.S.C. § 1983 ("Section 1983").  Dkt. No.

1 ("Compl."). Both plaintiffs have filed an application to proceed in forma pauperis ("IFP"). *See* Dkt. No. 2 ("Zanker IFP Application"); Dkt. No. 3 ("Wells IFP Application").[1] In addition, plaintiffs have filed a motion to consolidate this action with *Wells I*. *See* Dkt. No. 6 ("Motion to Consolidate").

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Mr. Wells has submitted a properly completed and signed IFP application, which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2).

---

[1] Before this action was commenced, Mr. Wells and Ms. Zanker filed *Wells et al v. Massena Police Department*, 8:25-CV-1403 (AJB/ML), Dkt. No. 1 (N.D.N.Y. filed 10/09/25) ("*Wells I*"). Mr. Wells is also litigating the following other actions in this District: (1) *Wells v. New York State Department of Corrections and Community Supervision*, 9:25-CV-1481 (ECC/ML), Dkt. No. 1 (N.D.N.Y. filed 10/23/25); (2) *Wells v. Harper*, 9:25-CV-1482 (MAD/PJE), Dkt. No. 1 (N.D.N.Y. filed 10/23/25); (3) *Wells v. Harper*, 9:25-CV-1545 (MAD/PJE), Dkt. No. 1 (N.D.N.Y. filed 11/03/25); (4) *Wells v. Bercume*, 9:25-CV-1642 (GTS/ML), Dkt. No. 1 (N.D.N.Y. filed 11/24/2025); (5) *Wells v. Harper*, 9:25-CV-1686 (ECC/PJE), Dkt. No. 1, (N.D.N.Y. filed 12/03/25); (6) *Wells v. LaRock*, 9:25-CV-1726 (BKS/DJS), Dkt. No. 1 (N.D.N.Y. filed 12/11/25); (7) *Wells v. Sanchez*, 9:25-CV-1738 (AJB/TWD), Dkt. No. 1 (N.D.N.Y. filed 12/12/25); and (8) *Wells v. Engle*, 9:25-CV-1777 (BKS/MJK), Dkt. No. 1 (N.D.N.Y. filed 12/19/25).

[2] Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that Mr. Wells has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

Mr. Wells has also filed the inmate authorization form required in this District.  Dkt. No. 4.

Accordingly, the Wells IFP Application is granted.

Although Ms. Zanker has also submitted a properly completed and signed IFP

application, which demonstrates economic need, for the reasons set forth below, the claims

asserted by her in this action are dismissed as duplicative of the claims asserted in *Wells I*.

Accordingly, the Zanker IFP Application is denied without prejudice as moot.

## III.    SUFFICIENCY REVIEW

### A.    Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) .

. . the court shall dismiss the case at any time if the court determines that – . . . (B) the action

. . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §

1915(e)(2)(B).[3]  Thus, even if a plaintiff meets the financial criteria to commence an action in

forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly

maintain the complaint that he filed in this District before the court may permit the plaintiff to

proceed with this action in forma pauperis.  *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action

in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim

---

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

   In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id*. (internal quotation marks and alterations omitted).

When conducting a review under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court may also consider whether the claims asserted by the plaintiff are duplicative of claims asserted in another action against the same defendants.  "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *see also Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.").  The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation."  *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).[4]  The doctrine is also meant to protect parties from "the vexation of concurrent litigation over the same subject matter."  *Adam v. Jacob,* 950

---

[4] For example, the Second Circuit has affirmed the dismissal of an action which "substantially duplicate[d]" the conspiracy claim asserted in a prior action, notwithstanding the fact that the conspiracy claim in the first action was dismissed as insufficiently pleaded and plaintiff was not afforded an opportunity to amend, because "[plaintiff's] recourse is to appeal that decision after judgment is entered in that case, not to file a duplicative second complaint."  *Brown v. Plansky*, 24 Fed. App'x. 26, 28 (2d Cir. 2001) (summary order).

F.2d 89, 93 (2d Cir. 1991).  The district court has broad discretion in determining whether an action should be dismissed as duplicative, and the exercise of this power is reviewed by the Court of Appeals for abuse of discretion.  *Lopez v. Ferguson*, 361 Fed. App'x 225, 226 (2d Cir. 2010) (finding that the district court did not abuse its discretion when it dismissed an action as duplicative of a pending class action as to which plaintiff fell within the certified class).  As the Second Circuit recognized in *Curtis*, "simple dismissal of the second suit is [a] common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  *Curtis*, 226 F.3d at 138-39 (citing *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980)).

Moreover, the dismissal of an in forma pauperis complaint as duplicative may also arise within the ambit of the court's power to dismiss a complaint which is frivolous or malicious pursuant to Section 1915(e).  *See, e.g., Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir.1988) ("[R]epetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915(d)[5] as malicious.") (quoting *Robinson v. Woodfork*, 834 F.2d 1023 (5th Cir. 1987)); *Buckenberger v. Reed*, Civ. No. 10-856, 2010 WL 1552672, at *1 (E.D. La. Mar. 16, 2010) (recommending dismissal of complaint asserting claims which were duplicative of those in a pending action as "malicious"); *Williams v. Bunn*, No. 06-CV-0466, 2007 WL 1703816, at *2 (W.D.N.Y. Jun. 7, 2007) (dismissing religious claim with prejudice because it was repetitive of a claim twice brought previously and dismissed for plaintiff's failure to serve); *Hahn v. Tarnow*, No. 06-CV-12814, 2006 WL 2160934, at *1 (E.D. Mich.

---

[5] 28 U.S.C. § 1915(d) was amended and recodified in 1996 as Section 1915(e).

July 31, 2006) (dismissing complaint as "repetitive, malicious and frivolous, and duplicative");

*Blake v. Bentsen*, No. 95-CV-2227, 1995 WL 428694, at *2 (E.D.N.Y. Jul. 11, 1995) (directing

dismissal of repetitious litigation as abusive and malicious).[6]

In determining whether actions are duplicative, "[c]ourts generally look to the identity of

the parties, legal claims, factual allegations including temporal circumstances, and the relief

sought to determine if the complaint is repetitive or malicious." *Hahn*, 2006 WL 2160934, at

*3. "Even where additional defendants are named, a second lawsuit is duplicative where it

'involves essentially the same factual background and legal questions as those presented in

the first and the new defendant's interests are adequately represented by the defendants in

the first.'" *Grimes-Jenkins v. Consol. Edison Co. of New York, Inc.*, 18-CV-1545, 2019 WL

1507938, at *4 (S.D.N.Y. Apr. 5, 2019) (quoting *Lopez v. Ferguson*, 361 F. App'x 225, 226

(2d Cir. 2010)).

**B.      Summary of the Complaint**

The complaint asserts allegations of wrongdoing related to both plaintiffs being

arrested in March 2024, Mr. Wells being charged with a parole violation based on the events

giving rise to his arrest, and incidents involving Mr. Wells and his incarceration at St.

Lawrence County Jail and two correctional facilities operated by the New York State

Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl.

The following facts are set forth as alleged in the complaint.

---

[6] *See also Denton v. Hernandez*, 504 U.S. 25, 30 (1992) (recognizing Congress's concern that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits") (citation omitted).

### 1. Plaintiffs' Arrests

In early 2024, plaintiffs resided together at a dwelling in Massena, New York.  Compl. at 7-9.  At the time, Mr. Wells was on parole.  *Id.* at 10.

On or about March 11, 2024, Massena law enforcement officials detained Mr. Wells on a street in Massena, New York and brought him to the police station for questioning by Police Detective Truax.  Compl. at 7-9.[7]  Mr. Wells was told by law enforcement officials that he would be released "in a few hours if he . . . cooperated."  *Id.* at 8-9.  "[K]nowing that [the] defendants [were] intentionally violating [his] Fourth Amendment rights," Mr. Wells "did not in fact cooperate" with law enforcement officials.  *Id.* at 9.  As a result, law enforcement officials "transported [Mr. Wells] to the St. Lawrence County Correctional Facility," where he was "committed" by a "court order" issued by "a Massena town court judge."  *Id.*

That same day, Mr. Wells and Ms. Zanker were charged by the Massena Police Department with various criminal offenses, including First Degree Robbery, Fourth Degree Criminal Possession of a Weapon, and Fourth Degree Criminal Mischief.  Compl. at 9.  On various dates over the ensuing three weeks, additional charges were brought against Mr. Wells, all arising out of the same incident.  *Id.* at 9-10.

Ms. Zanker was arrested by or at the direction of Massena Police Detective Truax "based solely upon falsified allegations which she was later exonerated upon[,]" and St. Lawrence County Assistant District Attorney Pasqua pursued the criminal charges against

---

[7]  Detective Truax is not named as a defendant in the caption of this action, but is named as a defendant in *Wells I*, as is the Massena Police Department.  *See Wells I*, Dkt. No. 1.

Ms. Zanker "with malice[.]"  Compl. at 33.[8]  For four days, Ms. Zanker was "false[ly]

imprison[ed]" before being "released from county jail" on probation.  *Id.* at 33-34.

The terms of probation imposed on Ms. Zanker included "forc[ing] [her] to urinate in

the presence of another human being" during probation visits.  Compl. at 34.  Defendant

Probation Officer Jane Doe also falsely informed Ms. Zanker that she would not be "permitted

to be with, around or raise a family with [Mr. Wells] whenever he is released" from prison.  *Id.*

### 2.  Mr. Wells' Parole Violation Charges

On or around March 16, 2024, defendant New York State Parole Officer Delano

"issue[d] violations of the terms of parole on [Mr. Wells] for numerous violations connected to

the initial robbery charges with full knowledge that said violations were false[,]" as later

established by a Grand Jury that issued a "'No Bill,' ultimately exonerating [Mr. Wells] of all

wrongdoing including parole violations."  Compl. at 10.

Defendant Delano was aware, prior to charging Mr. Wells with a parole violation, that

New York law requires that a parole revocation hearing take place "in the same designated

county where the parolee is allegedly violated."  Compl. at 30.  Mr. Wells was "eventually

sentenced[,]" at a Parole Hearing in Washington, "to a 12-month violation."  *Id.*  Roughly six

weeks after this sentence was imposed, a Grand Jury issued a "no bill" on the criminal

charges brought against Mr. Wells and Ms. Zanker.  *Id.* at 31.  Mr. Wells believes that

defendant Delano "intentionally assisted in manipulating the 12-month parole violation"

despite "knowing that the main violation stemmed from . . . [a] false charge of robbery[.]" *Id.*

---

[8]  Pasqua is not named as a defendant in the caption of this action, but is named as a defendant in *Wells I*.  *See Wells I*, Dkt. No. 1.

Despite the return of the "no bill[,]" and even though "the most the defendants could have issued . . . on [the] violations was between seven [and] fifteen days, with no more than 30[,]" Mr. Wells "was forced to finish his 12-month violation[.]"  *Id.*

### 3.  Mr. Wells' Incarceration at St. Lawrence County Jail

As a result of the charged parole violations and/or pending criminal charges, Mr. Wells was incarcerated at the St. Lawrence County Jail.  Compl. at 13-14.  Defendant Jail Administrator Harper and St. Lawrence County Sheriff Engle are responsible for the "policies, practices and customs" of the jail.  *Id.* at 13-14.

On or about May 6, 2024, Mr. Wells "was being housed in the . . . special housing unit" ("SHU") within the St. Lawrence County Jail.  *Id.* at 14.  That same day, Mr. Wells "was escorted out of the SHU to intake" for "watch . . . due to self-harm threats[.]"  *Id.* at 15.

As Mr. Wells was being escorted to intake, defendant Corrections Sergeant Reynolds "physically assaulted" Mr. Wells by "slapping and choking" him in the hallway.  Compl. at 15. Thereafter, Mr. Wells arrived at intake where he was "assaulted a second time" by defendant Reynolds.  *Id.*

On the night of May 6, 2024, Mr. Wells "experience[d] a severe mental detachment from reality" while "still on constant watch" and began "eating himself" in the "knee/leg" area of his body as unidentified officials "sat and watched" without intervening.  Compl. at 16.   The next morning, Mr. Wells was "informed that he would be transported to the Department of Corrections . . . for a mental health evaluation."  *Id.*  Defendants Harper and Engle authorized this transport even though Mr. Wells "was not yet a 'sentenced' prisoner under any 'parole violations' or sentenced to any 'county or state' penal law assessments/penalties for any

alleged 'state crimes.'"  *Id.* at 16-17.  Mr. Wells was transported to "a maximum security state

prison [ ] without a sentence . . . because defendants [Harper and Engle] had no training,

skills, [or] experience on how to deal with and handle [a] mental health breakdown."  *Id.* at 17.

Mr. Wells did not receive treatment for the "abcessed [sic] wounds on [his] legs" before he

was transported out of the jail.  *Id.* at 27.

### 4. Mr. Wells' Incarceration at DOCCS Facilities

On May 7, 2024, Mr. Wells arrived at Great Meadow Correctional Facility.  Compl. at

23.  Following his arrival at the facility, Mr. Wells was "brutally beaten by unknown John Doe

defendants in the draft process/reception area of the facility because [he] had caused a

rukuss [sic] in his county jail."  *Id.* at 24.  At the time, Mr. Wells had not yet had his "final

parole hearing" and was "not a state sentenced inmate[.]"  *Id.*

During the first and second weeks of Mr. Wells' confinement at Great Meadow

Correctional Facility, he "was not permitted any form of communication with the outside

world[,]" such as communications to the courts, Ms. Zanker, his attorney, or his children.

Compl. at 25-26.  Mr. Wells was also denied access to incoming legal mail and mail from his

family.  *Id.* at 26.  DOCCS and John Doe defendants deprived plaintiff of these forms of

communication.  *Id.*

Between May 9 and May 28, 2024, Mr. Wells was housed in a segregated unit and

issued one shirt, one pair of pants, one pair of boots, two bed sheets, and one blanket.

Compl. at 28.  Mr. Wells was not issued socks, underwear, soap, a phone, a tablet, an "ID

card" or commissary privileges.  *Id.*  On certain occasions during this time period, Mr. Wells

was also deprived of "wholesome meals" based on a lack of oversight from corrections

officials, as well as writing supplies, recreation, showers, hygiene products, and access to the law library.  *Id.*  DOCCS and John Doe defendants were responsible for these conditions and deprivations.  *Id.* at 26, 28.

As a result of the "dirty conditions" in which Mr. Wells was "forced to attempt to take care of his wounds" and a lack of adequate treatment for his leg wounds, he eventually contracted "MRSA[.]"  Compl. at 27, 29.  "After months of [Mr. Wells] complaining about [his] infected wounds," a Great Meadow Facility medical professional made the "MRSA" diagnosis in or around July 2024, following a "culture swab."  *Id.* at 29.  Mr. Wells was then "forced to take months of antibiotics to try to curb the massive MRSA infection[.]"  *Id.*

At some point, Mr. Wells was transferred to Clinton Correctional Facility where he was "'cut' by an unknown inmate" while "attending recreation in the main yard[.]"  Compl. at 32.  Clinton Correctional Facility John Doe defendants failed to maintain "video coverage overlooking all activities within the main yard[.]"  *Id.*

### 5.  Plaintiffs' Claims

Liberally construed, the complaint asserts various Section 1983 claims arising out of each plaintiff's arrest and imprisonment.  In addition, the complaint asserts the following Section 1983 claims on behalf of Mr. Wells arising out of the conditions of his confinement at St. Lawrence County Jail, Great Meadow Correctional Facility, and Clinton Correctional Facility (hereinafter, "the Wells Conditions-of-Confinement Claims"): (1) First Amendment free association and access-to-courts claims against DOCCS and Great Meadow Correctional Facility Corrections Officers "John Doe" based on depriving Mr. Wells of all forms of communication for a two-week period; (2) a Fourteenth Amendment excessive force claim

against defendant Reynolds; (3) a Fourteenth Amendment excessive force claim against Great Meadow Correctional Facility Corrections Officers "John Doe"; (4) Fourteenth Amendment medical indifference claims against defendants Harper, Engle, and St. Lawrence County; (5) Fourteenth Amendment substantive due process claims against defendants Harper, Engle, and St. Lawrence County based on Mr. Wells' transfer to a state prison for mental health evaluation; (6) Fourteenth Amendment conditions-of-confinement claims against DOCCS and Great Meadow Correctional Facility Corrections Officers "John Doe" based on officials denying Mr. Wells access to adequate clothing, blankets, hygiene supplies, meals recreation, showers, and food and communication privileges; and (7) Fourteenth Amendment failure-to-protect claims against DOCCS and Clinton Correctional Facility Corrections Officers "John Doe" based on the failure of these officials to properly monitor the prison yard and prevent Mr. Wells from being assaulted by another inmate.[9]

Plaintiffs seek money damages and declaratory relief. Compl. at 36-39. For a more complete statement of plaintiffs' claims, reference is made to the complaint.

---

[9] Although St. Lawrence County is not named as a defendant, the complaint expressly asserts official capacity claims against all the defendants and pleads "Monell" claims. *See* Compl. at 1, 5. Official capacity claims asserted against municipal employees are, in effect, claims against the county. *See Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself ... 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County. . . . She must show the deprivation of her rights was caused by a policy that was deliberately indifferent to those rights. . . . . And, further she must demonstrate that the county made some deliberate choice, implemented through policy or custom, which is the moving force behind the constitutional violation." (internal quotation marks and citations omitted)).

**C.    Duplicative Claims**

In *Wells I*, plaintiffs have asserted claims against the Massena Police Department, Massena Police Detective Connor Truax, and St. Lawrence County District Attorney Gary Pasqua arising out of their alleged wrongful arrests in March 2024, and subsequent imprisonment.  *See Wells I*, Dkt. No. 1.  In their Motion to Consolidate, plaintiffs expressly acknowledge that there are "common questions of fact" in this action and *Wells I*.  *See* Motion to Consolidate at 1.

However, granting the Motion to Consolidate will result in issues related to deprivations experienced by Mr. Wells during his incarceration being litigated in *Wells I*. These claims are distinct from the claims arising out of plaintiffs' alleged false arrest and imprisonment.  Accordingly, the Court finds that the interests of judicial efficiency instead favor dismissing all the claims in this action other than the Wells Conditions-of-Confinement Claims without prejudice as duplicative of the claims in *Wells I*.[10]

In light of the foregoing, the Motion to Consolidate is denied without prejudice as moot.

**D.    Analysis of Remaining Section 1983 Claims Brought By Mr. Wells**

Mr. Wells brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting

---

[10]  In the event plaintiffs wish to pursue any of the claims dismissed in this action that are not expressly asserted in the pleading in *Wells I*, they may do so by filing an amended complaint in that action in accordance with the Federal Rules of Civil Procedure.

42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1.  Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");  *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in the complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

15

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U.S. 139, 142-47 (1993); *McGinty v. New York,* 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.'"); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."). Thus, plaintiff's Section 1983 claim against DOCCS fails because this entity is absolutely immune from this lawsuit. *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 claims against DOCCS on Eleventh Amendment grounds); *Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("[T]he New York

16

State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself.").

Accordingly, plaintiff's official capacity claims for money damages against DOCCS employees, as well as his Section 1983 claims against DOCCS, are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment, and for failure to state a claim upon which relief may be granted.[11]

### 2. Claims Against "Doe" Defendants

When the name of an individual defendant is unknown, it is not inappropriate to identify him or her in the pleading as a "Doe" defendant.  However, the pleading must allege facts sufficient to plausibly suggest that each "Doe" defendant was personally involved in the alleged constitutional deprivations.  *See Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 493-94 (S.D.N.Y. 2014) (dismissing without prejudice excessive force claim asserted against "members of the 'Special Search Team' and 'ESU Officers'" and noting that, "[t]o the extent that [plaintiff] does not know the names of the members of the Special Search Team or ESU Officers involved, he may name 'John Doe' defendants and include as much identifying information as he has knowledge of, for the purpose of filing an amended complaint, should

---

[11]  In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities). In this case, the complaint lacks allegations which plausibly suggest that Mr. Wells is suffering from an ongoing violation of federal law, and he is no longer incarcerated at either of the DOCCS facilities where the alleged wrongdoing occurred.

Little chose to do so"); *Williams v. 120 PCT Undercover*, No. 11-CV-4690, 2011 WL

13128209, at *1 (E.D.N.Y. Oct. 18, 2011) (dismissing complaint without prejudice where

plaintiff's claims provided information about the alleged constitutional deprivations, but were

brought against "the 120 Precinct and District 9, a police precinct and district of the New York

City Police Department").  "Pleadings that do not differentiate which defendant was involved

in the unlawful conduct are insufficient to state a claim." *Ying Li v. City of New York*, No. 15-

CV-1599, 2017 WL 1208422, at *6 (E.D.N.Y. Mar. 31, 2017).  In other words, a pleading must

allege facts which plausibly suggest both who was involved in the alleged constitutional

deprivations, and how they were involved.  *See also Cipriani v. Buffardi*, No. 9:06-CV-889

(GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate

where a defendant is listed in the caption, but the body of the complaint fails to indicate what

the defendant did to the plaintiff." (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998

WL 382055, at *2 (S.D.N.Y. July 9, 1998))).

    In this case, liberally construed, the complaint asserts Section 1983 claims against an

unidentified number of "Doe" officials at both Clinton and Great Meadow Correctional Facility.

It is unclear from the complaint (1) when and where Mr. Wells encountered each "Doe"

official, or (2) how each "Doe" official engaged in wrongdoing.  The complaint also does not

include a physical or job description for any "Doe" official, or describe any communications

with any of these officials.

    Accordingly, insofar as Mr. Wells intended to assert one or more Section 1983 claims

against one or more "John Doe" defendants based on wrongdoing that occurred during his

incarceration at Clinton or Great Meadow Correctional Facilities, those claims are dismissed

without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for

failure to state a claim upon which relief may be granted

### 3. Claims Arising During Confinement at St. Lawrence County Jail

#### a. Excessive Force Claim

Insofar as Mr. Wells was a pretrial detainee at the time of the events giving rise to his

claims,[12] he "receive[d] protection against mistreatment at the hands of prison officials under .

. . the Due Process Clause of the Fourteenth Amendment[.]" *Caiozzo v. Koreman*, 581 F.3d

63, 69 (2d Cir. 2009), *overruled on other grounds by Darnell v. Pineiro*, 849 F.3d 17, 35 (2d

Cir. 2017).

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court distinguished

between Eighth and Fourteenth Amendment excessive force claims and held that a pretrial

detainee need not demonstrate that an officer accused of using excessive force was

subjectively aware that his use of force was unreasonable. *Id*. at 396-97. Rather, "to prove

an excessive force claim, a pretrial detainee must show . . . only that the officers' use of that

force was objectively unreasonable." *Id*. In making that objective determination, the court

must view the matter from "the perspective of a reasonable officer on the scene," and

consider "the relationship between the need for the use of force and the amount of force

used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the

amount of force; the severity of the security problem at issue; the threat reasonably perceived

by the officer; and whether the plaintiff was actively resisting." *Id*. at 397.

---

[12] At this stage of the proceeding, the Court makes no ruling as to this fact. Rather, the Court assumes that Mr.
Wells had this status out of an abundance of solicitude, and for purposes of this Decision and Order only.

In addition, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "As such, an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer." *Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017) (collecting cases), *report and recommendation adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Mr. Wells' excessive force claim against defendant Reynolds survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

Insofar as the complaint may be construed to assert an excessive force claim against St. Lawrence County based on Mr. Wells having also asserted an official capacity claim against defendant Reynolds, the Court reaches a different conclusion.

Municipal liability is limited under Section 1983 by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  In *Monell*, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has

sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459

F.3d 207, 219 (2d Cir. 2006).  Thus, to successfully state a claim for *Monell* liability, a plaintiff

must "make factual allegations that support a plausible inference that the [alleged]

constitutional violation took place pursuant either to a formal course of action officially

promulgated by the municipality's governing authority or the act of a person with policy

making authority for the municipality."  *Missel v. Cnty. of Monroe*, 351 Fed. App'x 543, 545

(2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)).  "Absent such a

custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis

for the tort of its employee."  *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012);

*see also Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the

Court held that 'a municipality cannot be held liable' solely for the acts of others, e.g., 'solely

because it employs a tortfeasor.'" (quoting *Monell*, 436 U.S. at 691)).

      In this case, the complaint lacks allegations which plausibly suggest that the alleged

use-of-force incident occurred pursuant to a custom or policy enacted or approved by St.

Lawrence County, or was carried out by one or more policymaking officials.  Indeed, Mr.

Wells does not even identify a "custom" or "policy" that resulted in the alleged wrongdoing, let

alone describe it in detail.  *See Valdiviezo v. Boyer*, 752 Fed. App'x 29, 31 (2d Cir. 2018) ("A

'general and conclusory allegation' of a municipal policy or custom fails to state a facially

plausible *Monell* claim." (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir.

2015)); *Littlejohn*, 795 F.3d at 315 (noting that to satisfy *Monell*'s policy or custom

requirement, a plaintiff must show either that the challenged practice "was so persistent or

widespread as to constitute a custom or usage with the force of law," or that the "practice of

subordinate employees was so manifest as to imply the constructive acquiescence of senior

policy-making officials." (internal quotation marks omitted)); *Nielsen v. City of Rochester*, 58

F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the

elements for stating a *Monell* claim are insufficient to state a claim for municipal liability)

(citing, *inter alia*, *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013));

*Bradley v. City of New York*, No. 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18,

2009) ("In terms of what a complaint must allege to survive a Motion to Dismiss, the Second

Circuit has held that 'the mere assertion . . . that a municipality has such a custom or policy is

insufficient in the absence of allegations of fact tending to support, at least circumstantially,

such an inference.'" (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993),

*overruled on other grounds*, *Leatherman v. Tarrant County Narcotics Intelligence &*

*Coordination Unit*, 507 U.S. 163, 164 (1993)).  Moreover, the complaint is devoid of facts

which plausibly suggest that the alleged use-of-force incident occurred as a result of

inadequate training.  Rather, the allegations in the complaint suggest only that Mr. Wells was

subjected to physical harm on one occasion by a low-ranking county official, which is not,

without more, a basis for imposing liability against the county.  *See, e.g., Ricciuti v. N.Y.C.*

*Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint,

especially if it involved only actors below the policy-making level, does not suffice to show a

municipal policy."); *Abujayyab v. City of New York*, No. 15-CV-10080, 2018 WL 3978122, at

*13 (S.D.N.Y. Aug. 20, 2018) ) ("Courts in this Circuit have consistently held that allegations

of a single incident, or even a few isolated incidents, will not suffice to permit the inference of

a broader municipal policy or custom, even on a motion to dismiss." (collecting cases));

22

*Vassallo v. City of New York*, No. 15-CV-7125, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016) ("Here, Plaintiff's allegations consist essentially of a recitation of the inadequate medical treatment received and generic claims that such inadequacies were a product of harmful customs and practices or failures to train or supervise. . . . Such boilerplate allegations are insufficient to state a *Monell* claim."); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535-37 (S.D.N.Y. 2012) (holding that "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details"); *Bradley v. City of New York*, No. 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("In terms of what a complaint must allege to survive a Motion to Dismiss, the Second Circuit has held that 'the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).

In light of the foregoing, insofar as the complaint may be construed to assert an excessive force claim against St. Lawrence County, that claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### b.  Medical Indifference Claims

To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must satisfy a two-pronged test.  First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'"  *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717

23

(S.D.N.Y. 2017) (quoting *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 139 (2d Cir. 2013)).  Second, the defendant must act with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, . . . which includes the risk of serious damage to physical and mental soundness[.]" *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").  The objective prong requires "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)).  To determine whether inadequate care is "sufficiently serious," a court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  "Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment— the inquiry focuses on 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.'" *Revels v. Corr. Med. Care, Inc.*, No. 9:17-CV-0088 (MAD/TWD), 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting *Smith v. Carpenter*, 316 F.3d 178,

186 (2d Cir. 2003)); *see also Ray v. Zamilus*, No. 13-CV-2201, 2017 WL 4329722, *8 (S.D.N.Y. Sept. 27, 2017) (finding that where a "plaintiff suffered from a delay in treatment, rather than a complete lack of treatment, the objective element must be satisfied by harm that resulted from the delay").

"Until very recently, the second, or mens rea, prong—the defendant's 'sufficiently culpable state of mind'—was assessed subjectively in claims brought under both the Eighth and the Fourteenth Amendments." *Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (quoting *Spavone*, 719 F.3d at 138). However, in light of the Supreme Court's ruling in *Kingsley*, "the mens rea prong of a deliberate indifference claim brought by a pretrial detainee is now to be assessed objectively." *Id*. at 117; *Lloyd*, 246 F.Supp.3d at 719. Thus, "rather than ask whether the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.'" *Lloyd*, 246 F. Supp. 3d at 719 (quoting *Darnell*, 849 F.3d at 33, 35).

In this case, the complaint alleges that on May 6, 2024, Mr. Wells was housed in the SHU at St. Lawrence County Jail for observation "due to self-harm threats[.]" Compl. at 14-15. The complaint further alleges that on the night of May 6, 2024, Mr. Wells "experience[d] a severe mental detachment from reality" while "still on constant watch" and began "eating himself" in the "knee/leg" area of his body as unidentified officials "sat and watched" without intervening. Compl. at 16. Mr. Wells also alleges that he did not receive treatment for the "abcessed [sic] wounds on [his] legs" before he was transported out of the jail the next day. *Id.* at 16-17, 27.

As an initial matter, the complaint does not include any details regarding (1) the duration of the mental health episode, (2) the nature or severity of the self-inflicted leg injuries suffered by Mr. Wells, (3) which official(s) observed the injuries, if any, (4) how and when the injuries were observed, or (5) how the condition worsened, if at all, based on a one-day delay in treatment.  Thus, the Court currently has no basis to plausibly infer that the alleged incident of self-harm could have been prevented or mitigated, or that the failure to immediately treat the alleged leg injuries exposed Mr. Wells to a further risk of harm.

In any event, the only officials named as defendants who were employed at St. Lawrence County Jail are Jail Administrator Harper, St. Lawrence County Sheriff Engle, and Corrections Sergeant Reynolds.  *See* Compl. at 1, 4-6.  The complaint does not allege that any of these officials observed or interacted with Mr. Wells at any point on the evening of May 6, 2024, or prior to his transfer out of the jail the next day.  Nor does the complaint allege facts which plausibly suggest that any of these officials were otherwise aware that Mr. Wells (1) was likely to harm himself, and (2) was being observed by professionals who were unable to address any potential issue.  Thus, the complaint fails to adequately allege that any of these officials were personally involved in the alleged deprivations that occurred on the evening of May 6, 2024.

Furthermore, insofar as Harper, Engle, and Reynolds are sued in their official capacities, the Court has no basis to plausibly infer from the allegations in the complaint that Mr. Wells was exposed to a substantial risk of harm or not treated for an objectively serious medical condition based on a St. Lawrence County policy or practice.  Indeed, the complaint

does not even attempt to articulate a specific policy or practice that resulted in the alleged constitutional deprivation.

In light of the foregoing, the medical indifference claims asserted by Mr. Wells are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### c. Substantive Due Process Claims

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (internal quotation marks and citation omitted). "Very few conditions of prison life are shocking enough to violate a prisoner's right to substantive due process." *Samms v. Fischer*, No. 10-CV-0349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011), *report and recommendation adopted by* 2011 WL 3876522 (N.D.N.Y. Aug. 31, 2011). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court provided only two examples: (1) the transfer to a mental hospital; and (2) the involuntary administration of psychotropic drugs. *See* 515 U.S. at 479 n.4; *see also United States v. Hardy*, 724 F.3d 280, 295 (2d Cir. 2013) ("[A] prisoner convicted of a crime 'possesses a significant liberty interest,' protected by the Due Process Clause, 'in avoiding

27

the unwanted administration of antipsychotic drugs.'" (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990))).

Although "a prisoner convicted of a crime 'possesses a significant liberty interest,' protected by the Due Process Clause, 'in avoiding the unwanted administration of antipsychotic drugs[,]'" *United States v. Hardy*, 724 F.3d 280, 295 (2d Cir. 2013) (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)), this right "may be outweighed by competing governmental interests, such as the interest of prison administrators 'in ensuring the safety of prison staffs and administrative personnel.'" *Id.* (quoting *Harper*, 494 U.S. at 223-25).  Thus, "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, Mr. Wells' substantive due process claims against defendants Harper, Engle, and St. Lawrence County survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

IV.    **CONCLUSION**

**WHEREFORE**, it is hereby

28

**ORDERED** that the Wells IFP Application (Dkt. No. 3) is **GRANTED**.[13]   The Clerk shall provide the superintendent of the facility, designated by Mr. Wells as his current location, with a copy of his authorization form (Dkt. No. 4), and notify the official that this action has been filed and that Mr. Wells is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk shall provide a copy of the Wells authorization form (Dkt. No. 4) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Zanker IFP Application (Dkt. No. 2) is **DENIED as moot** as set forth above; and it is further

**ORDERED** that the Motion to Consolidate (Dkt. No. 6) is **DENIED as moot** as set forth above; and it is further

**ORDERED** that plaintiffs' Section 1983 claims arising out of each plaintiff's arrest and imprisonment, i.e., all claims other than the Wells Conditions-of-Confinement Claims, are **DISMISSED without prejudice** as duplicative of the claims asserted in *Wells I*, without leave to renew in this action; and it is further

**ORDERED** that the Section 1983 claims for money damages asserted against DOCCS and DOCCS employees in their official capacity are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh

---

[13]  Mr. Wells should note that although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

Amendment, and for failure to state a claim upon which relief may be granted;[14] and it is further

ORDERED that the following claims **SURVIVE SUA SPONTE** review and require a response: (1) Mr. Wells' excessive force claim against defendant Reynolds; and (2) Mr. Wells' substantive due process claims against defendants Harper, Engle, and St. Lawrence County; and it is further

ORDERED that the remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

ORDERED that upon receipt from Mr. Wells of the documents required for service, the Clerk shall issue summonses and forward them, along with four copies of the complaint, to the United States Marshal for service upon defendants Reynolds, Harper, Engle, and St. Lawrence County.  The Clerk shall forward a copy of the summons and complaint by mail to the St. Lawrence County Attorney's Office, together with a copy of this Decision and Order; and it is further

ORDERED that upon the completion of service, a response to the complaint be filed by defendants Reynolds, Harper, Engle, and St. Lawrence County, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

---

[14]  Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011). Because these claims are barred by the Eleventh Amendment, leave to amend to would be futile.

ORDERED that the Clerk shall **TERMINATE** Ms. Zanker from this action; and it is further

ORDERED that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Mr. Wells must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.  **Mr. Wells is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

ORDERED that the Clerk shall serve a copy of this Decision and Order on the plaintiffs.

**IT IS SO ORDERED**.

Dated:  January 12, 2026
      Albany, NY

_____
Mae A. D'Agostino
U.S. District Judge

31