**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MICHAEL JAMES WELLS,

                       Plaintiff,

      v.                                   9:25-CV-1535
                                   (MAD/DJS)

PEGGY HARPER, _et al._,

                       Defendants.

_____

**APPEARANCES:**                            **OF COUNSEL:**

MICHAEL JAMES WELLS
Plaintiff, _Pro Se_
11-A-2829
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902

ST. LAWRENCE COUNTY           STEPHEN D. BUTTON, ESQ.
ATTORNEY'S OFFICE               County Attorney
_Attorney for Defendants_
48 Court Street
Canton, New York 13617

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>REPORT-RECOMMENDATION AND ORDER</u>[1]

     Presently before the Court is the pre-answer Motion to Dismiss filed by

Defendants Peggy Harper ("Harper"), Rick Engle ("Engle"), Bruce Reynolds

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

("Reynolds"), and St. Lawrence County ("County," and collectively with Harper, Engle, and Reynolds, "Defendants").[2]  Dkt. Nos. 13 & 21.  *Pro se* Plaintiff Michael James Wells ("Plaintiff") opposes the Motion to Dismiss.  Dkt. No. 20, Pl.'s Opp.[3]  For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss (Dkt. No. 13) be **GRANTED IN PART AND DENIED IN PART**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[4]

### A. The Complaint

On October 31, 2025, Plaintiff commenced this action alleging, among other things, that his federal constitutional rights were violated while he was incarcerated. Dkt. No. 1, Compl.  According to the Complaint, in early 2024, Plaintiff was detained by law enforcement officials, brought into the police station for questioning, charged with various criminal offenses, and transported to the St. Lawrence County Jail ("St. Lawrence Jail").  *Id.* at pp. 7-8.

On May 6, 2024, Plaintiff was housed in the Special Housing Unit ("SHU") of the St. Lawrence Jail.  *Id.* at ¶ 50.  Plaintiff alleges that, while being escorted out of SHU

---

[2] Reynolds is not listed as a Defendant on the Civil Docket.  In its initial review of the Complaint, the District Court "ORDERED that . . . the Clerk shall issue summonses and forward them, along with four copies of the complaint, to the United States Marshal for service upon defendants Reynolds, Harper, Engle, and [the] County." Dkt. No. 8 at p. 30.  It appears that the summons issued by the Clerk does not name Reynolds.  Dkt. No. 10. However, the Motion to Dismiss names Reynolds as a Defendant, Dkt. No. 21 at p. 1, and moves for dismissal of the Complaint on his behalf pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Dkt. No. 13-1 at p. 7.  The Clerk is, therefore, ordered to update the "Defendant" section of the Civil Docket to include Reynolds.

[3] Citations to Plaintiff's Opposition are to page numbers provided by the Court's CM/ECF system.

[4] In the interest of brevity, the Court only discusses those facts and claims relevant to the Motion to Dismiss herein.

"to intake for constant supervision . . . due to self-harm threats," Reynolds, a Corrections Sergeant at the St. Lawrence Jail, "physically assaulted" Plaintiff "by slapping and choking" him. *Id.* at ¶¶ 51-53. Plaintiff states that the assault first took place "in the hallway," *id.* at ¶ 53, and that a second assault then took place "while inside the 'bullpen.'" *Id.* at ¶ 54. Plaintiff asserts that this "degree of force . . . was unreasonable under the circumstances, and in violation of [his] rights." *Id.* at p. 21.

That night, Plaintiff alleges that he "experience[d] a severe mental detachment from reality" and began "eating himself." *Id.* at ¶ 56. The next morning, on May 7, 2024, Plaintiff "was informed that he would be transported to the Department of Corrections . . . for a mental health evaluation," *id.* at ¶ 57, and that his transfer was authorized by Harper, the St. Lawrence Jail's administrator, and Engle, the St. Lawrence County Sheriff. *Id.* at ¶ 58. Plaintiff notes that, at the time, he "was not yet a 'sentenced' prisoner under any 'parole violations' or sentenced to any 'county or state' penal law assessments/penalties for any alleged 'state crimes.'" *Id.* He alleges that he was "only" being transferred to Great Meadow Correctional Facility ("Great Meadow") "because Defendants had no training, skills, [or] experience on how to deal with and handle Plaintiff's mental health breakdown." *Id.* at ¶ 59.

Plaintiff arrived at Great Meadow, *id.* at ¶ 75, and contends that he "was illegally held and detained" there. *Id.* at ¶ 80. He alleges that, while there, he "was not permitted any form of communication with the outside world," including the courts, his wife, his children, and his attorney, *id.* at ¶ 81, and was "deprived legal mail" and "denied letters

3

from family." *Id.* at ¶ 82.  Plaintiff also alleges that he was "depriv[ed] . . . of paper, pen, envelopes[,] and legal supplies." *Id.* at ¶ 88.  He likewise complains that he was not given socks, underwear, soap, a phone or tablet, commissary, or an identification card, *id.* at ¶ 86, and that he did not receive "wholesome meals breakfast and lunch." *Id.* at ¶ 87.  He states that he had "no recreation, no showers [or] hygiene products, [and] no access to the law library, family[,] . . . lawyers, [and] the courts." *Id.* at ¶ 88.

Plaintiff alleges that he "contracted MRSA . . . because of the dirty conditions" in his cell.  *Id.* at ¶ 91.  Plaintiff describes the "cells" at Great Meadow as "very old, dirty, dried blood, spit, feces, urine[,] and contaminated." *Id.* at ¶ 93.  On or about July 2024, "[a]fter months of complaining about the infected wounds," Great Meadow diagnosed Plaintiff with MRSA, *id.* at ¶ 92, and he "was forced to take months of antibiotics to try to curb the massive MRSA infection." *Id.* at ¶ 93.

### B. The Initial Review

On January 13, 2026, the District Court reviewed the Complaint for sufficiency. *See generally* Dkt. No. 8.  The District Court construed the Complaint as asserting, among other things, "various Section 1983 claims" relating to Plaintiff's "conditions of his confinement" at several corrections facilities, including:

> (1) First Amendment free association and access-to-courts claims against DOCCS and Great Meadow . . . Corrections Officers "John Doe" based on depriving [Plaintiff] of all forms of communication for a two-week period; (2) a Fourteenth Amendment excessive force claim against defendant Reynolds; . . . (4) Fourteenth Amendment medical indifference claims against defendants Harper, Engle, and [the] County; (5) Fourteenth Amendment substantive due process claims against defendants Harper,

4

> Engle, and [the] County based on [Plaintiff's] transfer to a state prison for mental health evaluation; [and] (6) Fourteenth Amendment conditions-of-confinement claims against DOCCS and Great Meadow . . . Corrections Officers "John Doe" based on officials denying [Plaintiff] access to adequate clothing, blankets, hygiene supplies, meals[,] recreation, showers, and food and communication privileges.

*Id.* at pp. 12-13.  The District Court analyzed each claim in turn and dismissed several of them.  *Id.* at pp. 14-28.

The  District Court dismissed claims brought against the "Doe" defendants based on the Complaint's lack of clarity as to "(1) when and where [Plaintiff] encountered each 'Doe' official, or (2) how each 'Doe' official engaged in wrongdoing."  *Id.* at pp. 18-19.  This finding resulted in dismissal of the first listed claim[5] for free association and access-to-courts, as well as the sixth listed claim for conditions-of-confinement, both of which were brought against "Doe" Defendants.  *Id.* at pp. 12-13 & 18-19.  The District Court also dismissed the fourth listed claim for medical indifference on other grounds.  *Id.* at pp. 13 & 23-27.

The District Court found only two claims sufficient to survive *sua sponte* review. *Id.* at pp. 19-23 & 27-31.  These were the second listed claim for excessive force claim against Defendant Reynolds, and the fifth listed claim for substantive due process claims against Defendants Harper, Engle, and the County "based on [Plaintiff's] transfer to a state prison for mental health evaluation."  *Id.*

---

[5] For clarity, in stating the "listed" claims, the Court references each of the causes of action based on how they are numbered in the quoted paragraph from the District Court contained above.

In analyzing Plaintiff's substantive due process claims, the District Court stated that "[v]ery few conditions of prison life are shocking enough to violate a prisoner's right to substantive due process," but noted that the Supreme Court has cited two examples, including "(1) the transfer to a mental hospital; and (2) the involuntary administration of psychotropic drugs." *Id.* at pp. 27-28 (quotations and citations omitted). While the District Court acknowledged that an incarcerated individual's interests "in avoiding the unwanted administration of antipsychotic drugs . . . may be outweighed by competing governmental interests," the District Court found that "[a]t th[at] stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, [Plaintiff's] substantive due process claims against defendants Harper, Engle, and [the] County survive[d] sua sponte review and require[d] a response." *Id.* at p. 28.

## II. STANDARD

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

6

A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to a plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in

7

ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible" entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).  Nonetheless, a *pro se* complaint must state a plausible claim for relief.  *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).

### III. DISCUSSION

### A. Conditions-of-Confinement

Defendants first argue that Plaintiff fails to state an Eighth Amendment conditions-of-confinement claim because Plaintiff's allegations regarding his restrictive housing conditions are typical of SHU confinement and do not constitute unconstitutional deprivations.  Dkt. No. 13-1, Defs.' Mem. of Law at pp. 10-11.  The District Court, on initial review, dismissed Plaintiff's conditions-of-confinement claim. *See supra* at Section I.B.  The Court, therefore, recommends that the District Court deny and find moot Defendants' argument for dismissal of Plaintiff's Eighth Amendment conditions-of-confinement claim.  *See*, *e.g.*, *Smith v. Arnone*, 2016 WL 3064050, at *2, n.1, & n.6 (D. Conn. May 27, 2016), *aff'd*, 700 F. App'x 55 (2d Cir. 2017) (stating that, while "Defendants additionally seek summary judgment on the claims against

Defendants in their official capacities . . . . , the Court . . . already dismissed those claims" because "all claims against defendants in their official capacities were dismissed in the Initial Review Order"); *In re Trilegiant Corp., Inc.*, 2014 WL 1315835, at *3 (D. Conn. Mar. 28, 2014) (argument on motion to dismiss that claim was barred by statute of limitations was moot because court already granted a motion to dismiss that claim).

### B. Substantive Due Process

Defendants next assert that Plaintiff fails to allege sufficient facts establishing a substantive due process claim against Defendants Harper, Engle, Reynolds, and the County.  Defs.' Mem. of Law at pp. 12-14.  Defendants focus their argument on the constitutionality of "[a]dministrative segregation" and the requisite standard for "pretrial detainees" to state claims for "excessive force."  *Id.* at p. 13.

Notably, the District Court only described Plaintiff as having "substantive due process claims against defendants Harper, Engle, and [the] County based on [Plaintiff's] transfer to a state prison for mental health evaluation."  Dkt. No. 8 at p. 13.  Further, in analyzing Plaintiff's substantive due process claim, the District Court focused its evaluation on the interests of incarcerated individuals to avoid the "involuntary" and "unwanted" "administration of antipsychotic drugs."  *Id.* at pp. 27-28.  Thus, it does not appear that the District Court considered segregation or excessive force as components of Plaintiff's substantive due process claim.  *Id.* at pp. 13 & 27-28.

Insofar as Defendants' vague mention of Plaintiff's "segregation," Defs.' Mem. of Law at p. 13, refers to Plaintiff's allegations that he was deprived of communication

and denied recreation privileges, the District Court dismissed Plaintiff's first listed claim for free association and access-to-courts and his sixth listed claim for conditions-of-confinement based on these facts. Dkt. No. 8 at pp. 12-13 & 18-19.

As to the merits of Plaintiff's excessive force claim, Defendants assert, in conclusory fashion, that "[t]he allegations, as posited by the Plaintiff, fail to establish such elements and, even construed in a light most favorable to the Plaintiff, do not rise to the level of a substantive due process violation." Defs.' Mem. of Law at pp. 13-14. "Such a conclusory assertion is insufficient to merit dismissal of Plaintiff's claims." *Vellon v. Chefs' Warehouse, Inc.*, 2023 WL 6394228, at *3 (S.D.N.Y. Sept. 30, 2023). Even putting aside the conclusory nature of Defendants' argument, however, the Court disagrees.

Initially, the Court notes that, "at the motion-to-dismiss phase, courts are typically hesitant to dismiss excessive force claims." *Kirton v. Doe*, 2023 WL 2586279, at *5 (S.D.N.Y. Mar. 21, 2023) (citing cases). "[S]ummary judgment, rather than 12(b)(6) dismissal, is the generally appropriate mechanism for attacking an 'excessive force' action." *Dorsett v. Jefferson*, 1995 WL 20273, at *2 (S.D.N.Y. Jan. 19, 1995). In any event, to state "a claim for excessive force under the Fourteenth Amendment, a plaintiff must allege that force was applied 'purposefully, knowingly, or (perhaps) recklessly,'" *Kirton v. Doe*, 2023 WL 2586279, at *4 (quoting *Edrei v. Maguire*, 892 F.3d 525, 534 (2d Cir. 2018)), and "must also allege facts suggesting that the use of

10

force was 'objectively unreasonable' under the circumstances." *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Here, the Complaint alleges that, on May 6, 2024, while Plaintiff was being escorted out of SHU, Reynolds "physically assaulted" him "by slapping and choking" him. Compl. at ¶¶ 51-53. Plaintiff asserts that this "degree of force . . . was unreasonable under the circumstances, and in violation of [his] rights." *Id.* at p. 21. In the Motion to Dismiss, Defendants acknowledge that "Plaintiff alleges that during his confinement, Correctional Sergeant Bruce Reynolds assaulted him and choked him." Defs.' Mem. of Law at p. 5. Courts have found similar allegations sufficient to withstand a motion to dismiss. *See*, *e.g.*, *Rodriguez v. Armstrong*, 2025 WL 4098923, at *8 (N.D.N.Y. Dec. 31, 2025), *report and recommendation adopted*, 2026 WL 267274 (N.D.N.Y. Feb. 2, 2026) (denying defendants' motion to dismiss plaintiff's Fourteenth Amendment excessive force claim where plaintiff "ple[d] facts suggesting he was assaulted . . . without any justification," "provide[d] details about where and when the assault occurred," and "provide[d] facts regarding the alleged conduct"). The Court, therefore, recommends that the District Court find that the allegations contained in the Complaint are sufficient to state a plausible excessive force claim against Reynolds.[6]

---

[6] On initial review, the District Court held that Plaintiff's "substantive due process claims against defendants Harper, Engle, and [the] County based on [Plaintiff's] transfer to a state prison for mental health evaluation" survived *sua sponte* review. Dkt. No. 8 at pp. 13 & 30. Defendants' arguments related to Plaintiff's due process claims focus on administrative segregation and excessive force, Defs.' Mem. of Law at p. 13, and Defendants did not raise any arguments related specifically to Plaintiff's transfer to a state prison for mental health evaluation.

11

### C. *Monell*

Defendants contend that Plaintiff fails to state a *Monell* claim against the County. Defs.' Mem. of Law at pp. 14-16.  In support of this argument, Defendants explain that "Plaintiff identifies no policy, no widespread practice, and no decision by a final policymaker," *id.* at p. 16, and does not "allege facts demonstrating a widespread and persistent practice sufficient to establish a municipal custom."  Dkt. No. 21 at p. 5. Instead, Defendants contend that Plaintiff "relies upon conclusory references to 'policies' and 'customs' unsupported by factual allegations."  *Id.*

A municipality may only face liability under Section 1983 for constitutional violations pursuant to the well-established doctrine of municipal liability set forth in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "Liability under *Monell* is permitted only where a plaintiff successfully alleges that a constitutional deprivation was caused by municipal policy or custom."  *Lawrence v. Shattick*, 2024 WL 5454789, at *4 (N.D.N.Y. Sept. 23, 2024) (quotation, internal quotation marks, and alterations omitted), *report and recommendation adopted as modified*, 2025 WL 542587 (N.D.N.Y. Feb. 19, 2025).  Notably, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Wilson v. Cnty. of Onondaga*, 2022 WL 3141764, at *7 (N.D.N.Y. Apr. 21, 2022) (quoting *Segal v. City of New York*, 459 F.3d 207, 219 (2d

Cir. 2006)) (internal quotation marks omitted), *report and recommendation adopted*, 2022 WL 2965584 (N.D.N.Y. July 27, 2022).

Plaintiff has made no such allegations here that would defeat the Motion to Dismiss.    The Complaint makes vague reference to Defendants' "enforcement of unconstitutional practices of department policies, procedures, rules, [and] regulations, whether written or unwritten." Compl. at p. 2.  The Complaint also references a "*Monell* claim, whereas each defendant through . . . Engle enforced, violated, [and] manipulated policies, procedures, customs, [and] regulations that ultimately violated . . . Plaintiff[']s constitutional rights."  *Id.* at ¶ 15.  However, Plaintiff identifies no specific policy or procedure of the County that caused his alleged constitutional deprivation.

Plaintiff also "fail[s] to allege any facts . . . from which a specific policy, practice, custom, or usage could be inferred."  *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 77-78 (N.D.N.Y. 2023) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (affirming dismissal of *Monell* claim where "[t]he complaint contained only conclusory and speculative assertions" that the alleged conduct occurred "pursuant to the practice, custom, policy and particular direction of" the supervisory official)).  "Plaintiffs' boilerplate allegations are insufficient to support a *Monell* claim." *Id.* (citing *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 298 (N.D.N.Y. 2018) ("For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege sufficient factual detail and not mere boilerplate allegations that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy.")).

13

The Complaint's allegations regarding any alleged failure to train are also insufficient. "To properly plead a *Monell* claim based upon a theory of failure to train . . . , a plaintiff must identify a specific deficiency in the municipality's training program and establish that said deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Id.* (quotations omitted). Here, the Complaint alleges that Harper was responsible for training staff, Compl. at ¶ 12, and that Plaintiff "was only being placed in" Great Meadow "because defendants had no training, skills, [or] experience on how to deal with and handle plaintiff's mental health breakdown." *Id.* at ¶ 59; *see also id.* at ¶¶ 61-63 & 67-69. Courts have found insufficient and dismissed similar "boilerplate allegations" that only vaguely allege inadequate mental health training. *Yousef v. Cnty. of Westchester*, 2020 WL 2037177, at *11 (S.D.N.Y. Apr. 28, 2020) (quoting *Plair v. City of N.Y.*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (citing cases)) (finding insufficient plaintiff's assertion that defendants "were inadequately trained to identify and address . . . serious medical conditions"); *see also Campbell v. Ponte*, 2016 WL 3948103, at *4 (S.D.N.Y. July 19, 2016) (finding insufficient plaintiff's *Monell* claim based on inadequate training of "corrections officers regarding pretrial detainees with mental health issues"). The Court, therefore, recommends dismissal of Plaintiff's substantive due process claim against the County.

### D. Qualified Immunity

Finally, the individual Defendants maintain that they are entitled to qualified immunity because "no clearly established law held that the restrictive conditions

14

described by [Plaintiff] constituted cruel and unusual punishment" or that "segregated population housing, brief delays[,] or denial of minor medical treatments constitute conditions of confinement substantive enough to support liability." Defs.' Mem. of Law at pp. 16-18. As explained, the District Court has already dismissed Plaintiff's claims related to his conditions of confinement, segregation, and medical treatment. *See supra* at Sections I.B, III.A, & III.B. The Court, therefore, recommends that the District Court deny and find moot Defendants' argument for dismissal based on qualified immunity.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 13) be **GRANTED IN PART AND DENIED IN PART**; and it is further

**RECOMMENDED**, that Plaintiff's substantive due process claim against the County be **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action; and it is further

**ORDERED**, that the Clerk of the Court update the "Defendant" section of the Civil Docket to include Bruce Reynolds.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[7] within which to file written objections to the foregoing report. Such objections shall be filed

---

[7] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal

with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: June 24, 2026
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).